IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CARDAUTH SOLUTIONS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> THALES DIS CPL USA, INC., <br><br> *Defendant.* | Civil Action No. 1:26-cv-01065-RP <br><br><br> JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CardAuth Solutions LLC ("CardAuth" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint and makes the following allegations of patent infringement relating to U.S. Patent No. 8,689,013 (the "'013 Patent" or the "patent-in-suit"). Defendant Thales DIS CPL USA, Inc. ("Thales" or "Defendant") infringes the patent-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 271 *et seq*.

## THE PARTIES

1. CardAuth is a Texas limited liability company having its principal place of business at 121 Frederick St., Austin, TX 78704.

2. Upon information and belief, Defendant Thales DIS CPL USA, Inc. is a corporation organized under the laws of Delaware and maintains its principal place of business at 9442 Capital of Texas Hwy, Plaza II, Suite 400, Austin, Texas 78759.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has specific personal jurisdiction over Thales consistent with the Texas long-arm statute and due process. Thales has sufficient minimum contacts with the forum because,

1

inter alia, (i) Thales has done and continues to conduct business in Texas including in this District, (ii) Thales has a regular and established place of business in this District, and (iii) Thales has, directly and through intermediaries, committed and continues to commit acts of patent infringement in Texas including in this District. Moreover, Thales actively directs its activities to customers located in the State of Texas and this District.

5. Venue is proper in this District under 28 U.S.C. § 1400(b). Defendant Thales has an office in the Western District of Texas at 9442 Capital of Texas Hwy, Plaza II, Suite 400, Austin, TX 78759, has transacted business in the Western District of Texas, and has committed acts of infringement in the Western District of Texas.

**THE PATENT-IN-SUIT - U.S. PATENT NO. 8,689,013**

6. U.S. Patent No. 8,689,013 (the "'013 Patent"), entitled "Dual-Interface Key Management," was filed on October 20, 2010 and claims priority to October 21, 2008. A true and correct copy of the '013 Patent is attached hereto as Exhibit A.

7. The '013 Patent identifies a concrete access-card architecture problem. In the separate-message architecture described in the specification, key-management delivery could be handled outside the ordinary challenge-response authentication interaction. A computing device between the remote server and the access card could be required to communicate with the remote server and receive a transmission that includes key information, parse that transmission to obtain the key, initiate a separate communication with the access card, and pass the key to the access card. Ex. A, 13:30–14:7.

8. The specification explains that this separate-message architecture created design, deployment, maintenance, and security burdens. For example, the intermediate computer could need specialized software to decrypt and parse server data, communicate with corresponding server modules, obtain the key, and pass that key to the access card. The specification further explains that the specialized application and its communications may need to be protected from malicious programs running on the intermediate computer. Ex. A, 13:51–14:12.

9.      The '013 Patent describes a conduit approach that changes that arrangement. Instead of requiring the intermediate computer to parse and process all payload communications, at least some data received from the remote server can simply be passed along to the access card. The specification explains that this conduit can be established without specialized software using standard web-browser software and a card-reader driver. Ex. A, 14:12–37.

10.     The specification also applies that message-design approach to authentication requests. It describes authentication requests in which data strings are "formatted to serve as challenges" and challenge-response data strings serve as vehicles for carrying key-management information. Ex. A, 2:14–23. In the combined secure-session/key-transmission embodiment, key-management information can be included within the challenge string itself, including "an encrypted version of the short-term access keys, or other key-management information," such that the key-management information is hidden within "seemingly random challenge strings." Ex. A, 15:22–36. After that payload-bearing challenge string is received by the access card, the secure channel used for that payload-delivery task can be terminated. *Id*.

11.     Claim 28 reflects that disclosed architecture. Claim 28 recites an access card having an interface, memory, and processor. The processor is configured to receive challenge data according to an authentication protocol, where the challenge data is received in lieu of a challenge, the challenge comprises one or more random numbers, and the challenge data comprises encrypted key-management information. The processor is further configured to obtain key-management information from the challenge data by decrypting the encrypted key-management information, store that key-management information in the memory of the access card, and process the challenge to generate the authentication response. Ex. A, 33:52–34:22.

12.     Claim 28 does not purport to cover all authentication systems, all challenge-response protocols, all encryption, all key management, all access cards, or all FIDO authenticators. It is limited to the claimed access-card architecture in which challenge data received by the access card according to an authentication protocol includes encrypted key-management information, and the access card obtains and stores key-management information

3

from that challenge data by decrypting the encrypted key-management information. In that architecture, the challenge data is a payload-bearing authentication message received in place of a bare challenge, while the challenge is still processed to generate the authentication response. Ex. A, 33:52–34:22.

13.    The prosecution history confirms the same architectural distinction. During prosecution, the applicant distinguished U.S. Patent Application Publication No. 2008/0016354 A1 to Wilding et al. ("Wilding"), explaining that Wilding's client identification information package and client challenge information package were not challenge data used according to an authentication protocol. Rather, Wilding's client challenge information package was merely used to package other elements and was not processed according to an authentication protocol, and neither package was processed in the claimed manner to obtain key-management information by decrypting encrypted key-management information. '013 Patent File History, Aug. 9, 2013 RCE Remarks at 8–10.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 8,689,013**

14.    The preceding paragraphs are reincorporated by reference as if fully set forth herein.

15.    The '013 Patent is valid and enforceable.

16.    CardAuth is the owner and assignee of all rights, title, and interest in the '013 Patent, including the rights to grant licenses, to exclude others, and to recover past damages for infringement of that patent.

17.    Upon information and belief, Thales designs, develops, makes, uses, sells, imports, and/or offers for sale in the United States Thales SafeNet hardware authentication tokens and security keys that support FIDO U2F authentication, including at least the SafeNet eToken FIDO and the SafeNet eToken Fusion FIPS family, including the SafeNet eToken Fusion FIPS and SafeNet eToken Fusion NFC FIPS (collectively, the "Accused Instrumentalities" or the "Thales FIDO Security Keys"). Thales's public certification materials identify FIPS certificate 4517 for

4

the IDPrime 3930 FIDO cryptographic module as applicable to the SafeNet eToken FIDO and SafeNet eToken Fusion FIPS product families. References in this First Amended Complaint to FIDO U2F, U2F Authenticate, key handle, FIDO applet, and related authentication functionality refer to the accused functionality as implemented in the Accused Instrumentalities, and not to any FIDO standard in the abstract.

18.    Upon information and belief, the Accused Instrumentalities are portable hardware authentication tokens used to control logical access to digital resources and include, at minimum, a physical interface, internal memory, and onboard cryptographic processing circuitry. Thales's own product materials describe the accused SafeNet eToken product families as USB hardware security keys and identify onboard flash memory for those products. Thales's FIPS 140-2 security policy for the IDPrime 3930 FIDO cryptographic module further describes the relevant module as a secure controller module implementing the FIDO applet and depicts internal hardware including RAM, EEPROM, flash memory, and a CPU. Accordingly, upon information and belief, the Accused Instrumentalities include an interface, a memory, and a processor coupled to that interface and memory, satisfying the structural limitations of claim 28. *See, e.g.,*

| SafeNet Product Name | eToken FIDO | eToken FIDO | eToken Fusion | eToken Fusion CC | eToken Fusion FIPS |
|---|---|---|---|---|---|
| Form Factor | USB-A | USB-C | USB-A or USB-C | USB-A or USB-C | USB-A or USB-C |
| Contact (ISO 7816) | FIDO | FIDO | FIDO & PKI | FIDO & PKI | FIDO & PKI |
| Contactless (ISO 14443) | N/A | N/A | N/A | N/A | N/A |
| **Memory** | | | | | |
| Memory chip | 400 KB Flash | 400 KB Flash | 400 KB Flash | 400 KB Flash | 400 KB Flash |
| Free memory available for resident keys, certificates, additional applets & data | 90 KB | 55 KB | 55 KB | 52 KB | 55 KB |
| **Applet Features** | | | | | |
| FIDO discoverable credentials (resident keys) | Up to 8 | Up to 8 | Up to 8 | Up to 8 | Up to 8 |
| FIDO Biometry number of supported fingerprints | N/A | N/A | N/A | N/A | N/A |
| PKI key containers | N/A | N/A | Up to 32 [2] | 20 | Up to 32 [2] |
| Thales FIDO Enterprise features | N/A | N/A | N/A | N/A | N/A |
| FIDO Authentication algorithms | ECC 256 ECDSA | ECC 256 ECDSA | ECC 256 ECDSA | ECC 256 ECDSA | ECC 256 ECDSA |
| Java Card | 3.0.4 | 3.0.4 | 3.0.4 | 3.0.4 | 3.0.5 |
| Global Platform | 2.2.1 | 2.2.1 | 2.2.1 | 2.2.1 | 2.2.1 |
| FIDO2.0 | FIDO 2.0 | FIDO 2.0 | FIDO 2.0 | FIDO 2.0 | FIDO 2.0 |
| PKI | N/A | N/A | IDPrime 930nc (MD 4.5 applet) | IDPrime 940 | IDPrime 930 (MD 4.5 applet) |
| U2F | ✓ | ✓ | ✓ | ✓ | ✓ |
| Base CSP minidriver (SafeNet minidriver) | N/A | N/A | ✓ | ✓ | ✓ |

https://cpl.thalesgroup.com/sites/default/files/content/brochures/FIDO2-security-keys-specifications-br.pdf



https://csrc.nist.gov/CSRC/media/projects/cryptographic-module-validation-program/documents/security-policies/140sp4517.pdf

19.     Upon information and belief, during FIDO U2F authentication the Accused Instrumentalities receive, via their USB and/or NFC interface, the protocol-defined U2F Authenticate request data. As reflected in the U2F Authenticate message format, that request includes, among other fields, a challenge parameter, an application parameter, a key-handle-length field, and a key handle. The relying party generates a fresh random challenge value for each authentication, and the challenge parameter provided to the authenticator is a SHA-256 hash of client data that contains that relying-party challenge. Thus, the Accused Instrumentalities receive structured authentication request data that includes a challenge-related value rather than the raw random challenge alone. The same request also includes the key handle, and Thales's own FIPS

materials identify authenticator secret keys used for the encryption, decryption, and authentication of key handles, supporting that the received request data includes encrypted key-management information in the key-handle field. *See, e.g.,*



## 5.1 Authentication Request Message - U2F_AUTHENTICATE

Fig. 4 Authentication Request Message

- The **challenge parameter** [32 bytes]. The challenge parameter is the SHA-256 hash of the Client Data, a stringified JSON data structure that the FIDO Client prepares. Among other things, the Client Data contains the challenge from the relying party (hence the name of the parameter). See below for a detailed explanation of Client Data.

- The **application parameter** [32 bytes]. The application parameter is the SHA-256 hash of the UTF-8 encoding of the application identity of the application requesting the authentication as provided by the relying party.

- A **key handle length byte** [1 byte], which specifies the length of the key handle (see below). The value is unsigned (range 0-255).

- A **key handle** [length specified in previous field]. The key handle. This is provided by the relying party, and was obtained by the relying party during registration.

https://fidoalliance.org/specs/fido-u2f-v1.1-id-20160915/fido-u2f-raw-message-formats-v1.1-id-20160915.html

### 4.3   FIDO Applet Critical Security Parameters

| Key | Description / Usage |
| --- | --- |
| FID-SC-SMAC-AES | AES 256-bit Session key used for Secure Messaging (MAC) |
| FID-SC-SENC-AES | AES 256-bit Session key used for Secure Messaging (Decryption) |
| FID-KG-AS-ECDSA | P-256 private part of the user key pair |
| FID-AT-ECDSA | P-256 private part of the of the authenticator attestation key pair. The public part is stored in the device attestation certificate |
| FID-SC-ENC-AES | AES authenticator secret key used for encryption and decryption of key handles with AES CBC |
| FID-SC-AUTH-HMAC | HMAC 128-bit authenticator secret key used for authentication of key handles with HMAC-SHA256 |

https://csrc.nist.gov/CSRC/media/projects/cryptographic-module-validation-program/documents/security-policies/140sp4517.pdf

20.     Upon information and belief, in that same U2F Authenticate operation, the Accused Instrumentalities process the received challenge-related data according to the U2F authentication protocol to generate the authentication response. Under the U2F protocol, the authenticator returns a response that includes a user-presence indicator, a counter, and a signature, where the signature is generated over protocol fields that include the application parameter, the user-presence indicator, the counter, and the challenge parameter from the authentication request. Accordingly, the Accused Instrumentalities process the challenge to generate a response according to the authentication protocol. *See, e.g.,*

---

Fig. 5 Authentication Response Message: Success

This message is output by the U2F token after processing/signing the authentication request message described above. Its raw representation is the concatenation of the following:

- A **user presence byte** [1 byte]. Bit 0 is set to 1, which means that user presence was verified. (This version of the protocol doesn't specify a way to request authentication responses without requiring user presence.) A different value of Bit 0, as well as Bits 1 through 7, are reserved for future use. The values of Bit 1 through 7 SHOULD be 0:



user presence byte

Fig. 6 User Presence Byte Layout

- A **counter** [4 bytes]. This is the big-endian representation of a counter value that the U2F token increments every time it performs an authentication operation. (See Implementation Considerations [U2FImplCons] for more detail.)

- a **signature**. This is a ECDSA signature (on P-256) over the following byte string:

  ○ The *application parameter* [32 bytes] from the authentication request message.

  ○ The above *user presence byte* [1 byte].

  ○ The above *counter* [4 bytes].

  ○ The *challenge parameter* [32 bytes] from the authentication request message.

The signature is encoded in ANSI X9.62 format (see [ECDSA-ANSI] in bibliography).

The signature is to be verified by the relying party using the public key obtained during registration.

https://fidoalliance.org/specs/fido-u2f-v1.1-id-20160915/fido-u2f-raw-message-formats-v1.1-id-20160915.html

21.     Upon information and belief, during U2F authentication the Accused Instrumentalities obtain key-management information from the received U2F Authenticate request data by decrypting encrypted key-management information carried in the key-handle field of that request. As described above, the U2F Authenticate request delivered to the token includes a key handle. Thales's own FIPS materials identify FID-KG-AS-ECDSA as the P-256 private part of the user key pair, FID-SC-ENC-AES as an AES authenticator secret key used for encryption and decryption of key handles with AES CBC, and FID-SC-AUTH-HMAC as an HMAC authenticator secret key used for authentication of key handles with HMAC-SHA256. Public U2F technical materials further state that a key handle allows the U2F token to identify the generated key pair, and that U2F tokens may wrap the generated private key and the application identifier as the key handle. Accordingly, upon information and belief, the Accused Instrumentalities obtain key-management information from the received challenge data by decrypting encrypted key-management information contained in the key handle. *See, e.g.*,

| 4.3    FIDO Applet Critical Security Parameters | |
|---|---|
| **Key** | **Description / Usage** |
| FID-SC-SMAC-AES | AES 256-bit Session key used for Secure Messaging (MAC) |
| FID-SC-SENC-AES | AES 256-bit Session key used for Secure Messaging (Decryption) |
| FID-KG-AS-ECDSA | P-256 private part of the user key pair |
| FID-AT-ECDSA | P-256 private part of the of the authenticator attestation key pair. The public part is stored in the device attestation certificate |
| FID-SC-ENC-AES | AES authenticator secret key used for encryption and decryption of key handles with AES CBC |
| FID-SC-AUTH-HMAC | HMAC 128-bit authenticator secret key used for authentication of key handles with HMAC-SHA256 |

https://csrc.nist.gov/CSRC/media/projects/cryptographic-module-validation-program/documents/security-policies/140sp4517.pdf

This message is output by the U2F token once it created a new keypair in response to the registration request message. Note that U2F tokens should verify user presence before returning a registration response success message (otherwise they should return a test-of-user-presence-required message - see above). Its raw representation is the concatenation of the following:

- A **reserved byte** [1 byte], which for legacy reasons has the value 0x05.

- A **user public key** [65 bytes]. This is the (uncompressed) x,y-representation of a curve point on the P-256 NIST elliptic curve.

- A **key handle length byte** [1 byte], which specifies the length of the key handle (see below). The value is unsigned (range 0-255).

- A **key handle** [length specified in previous field]. This a handle that allows the U2F token to identify the generated key pair. U2F tokens may wrap the generated private key and the application id it was generated for, and output that as the key handle.

https://fidoalliance.org/specs/fido-u2f-v1.1-id-20160915/fido-u2f-raw-message-formats-v1.1-id-20160915.html

22.    Upon information and belief, the key-management information recovered from the encrypted key handle is stored at least transiently in the internal memory of the Accused Instrumentalities during the U2F Authenticate operation. As described above, the Accused Instrumentalities decrypt the key handle during authentication in order to recover credential-specific key-management information used to generate the authentication response. Thales's FIPS 140-2 security policy for the IDPrime 3930 FIDO cryptographic module identifies internal memory resources including RAM, EEPROM, and flash memory and further explains that keys stored in RAM are zeroized upon power-cycle of the cryptographic module. During the Authenticate operation, the recovered key-management information therefore resides, at least transiently, in the token's internal memory while the device performs signature generation and related response processing. Accordingly, upon information and belief, the Accused Instrumentalities store the key-management information in the memory of the access card, satisfying claim 28. *See, e.g.,*



https://csrc.nist.gov/CSRC/media/projects/cryptographic-module-validation-program/documents/security-policies/140sp4517.pdf

10

23.    Upon information and belief, Thales has directly infringed and continues to directly infringe the '013 Patent by, among other things, making, using, offering to sell, selling, and/or importing in the United States the Thales FIDO Security Keys during the term of the '013 Patent, in violation of 35 U.S.C. § 271(a).

24.    Upon information and belief, by making, using, offering to sell, selling, importing, and/or testing the Thales FIDO Security Keys, Thales has injured CardAuth and is liable for directly infringing one or more claims of the '013 Patent, including at least claim 28, pursuant to 35 U.S.C. § 271(a). The Thales FIDO Security Keys meet each and every limitation of at least claim 28 as alleged herein.

25.    Upon information and belief, Thales has had knowledge of the '013 Patent since at least March 17, 2026, when it received notice identifying the '013 Patent, identifying the Thales FIDO Security Keys, and notifying Thales that such products and functionality infringe the '013 Patent.

26.    Upon information and belief, at least since March 17, 2026, Thales has indirectly infringed and continues to indirectly infringe the '013 Patent by actively inducing infringement under 35 U.S.C. § 271(b).

27.    At least since March 17, 2026, upon information and belief, Thales has had knowledge of the '013 Patent and knowledge that the ordinary, intended, and instructed use of the Thales FIDO Security Keys infringes the '013 Patent.

28.    Upon information and belief, Thales has intended to cause, and has caused, infringement by third-party customers and end users of the Thales FIDO Security Keys. Thales publishes and distributes product descriptions, setup materials, technical documentation, brochures, certifications, and other instructions describing and encouraging use of the accused products for FIDO authentication, including U2F authentication, in the ordinary manner for which those products are designed. By providing those materials and promoting that intended use, Thales has knowingly encouraged, instructed, and induced customers and end users to use the Thales

11

FIDO Security Keys in a manner that directly infringes one or more claims of the '013 Patent, including at least claim 28.

29.     After receiving CardAuth's March 17, 2026 notice letter, Thales continued to make, use, offer to sell, sell, import, market, and support the Thales FIDO Security Keys, and continued to publish and distribute the materials described above promoting the accused functionality.

30.     Despite having notice of its infringement, Thales has continued its infringing conduct. Upon information and belief, Thales's post-notice conduct has been and continues to be willful, and CardAuth is therefore entitled to enhanced damages under 35 U.S.C. § 284.

31.     As a result of Thales's infringement of the '013 Patent, CardAuth has suffered and continues to suffer damages and seeks no less than a reasonable royalty for Thales's infringement, together with pre-judgment and post-judgment interest and costs as fixed by the Court. See 35 U.S.C. § 284.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CardAuth respectfully requests that this Court enter:

1. A judgment in favor of CardAuth that Thales has infringed the '013 Patent;

2. A judgment that Thales's infringement of the '013 Patent is willful;

3. An award of damages resulting from Thales's acts of infringement in accordance with 35 U.S.C. § 284;

4. A judgment that this case is exceptional under 35 U.S.C. § 285 and awarding CardAuth its reasonable attorneys' fees, costs, and expenses incurred in this action;

5. A judgment and order requiring Thales to provide an accounting and to pay supplemental damages, including, without limitation, pre-judgment and post-judgment interest; and

6. Any and all other relief to which CardAuth may be entitled.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), CardAuth requests a trial by jury of all issues so triable by right.

Dated:  June 15, 2026                    Respectfully Submitted,

/s/ *Bradford J. Black*
Bradford J. Black
Texas Bar No. 24086243
bblack@bradfordblack.com
**BRADFORD BLACK P.C.**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (415) 813-6211
Facsimile: (415) 813-6222

*Attorneys for Plaintiff*
CARDAUTH SOLUTIONS LLC

13

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service on June 15, 2026, via electronic filing using the Court's CM/ECF system.

/s/ *Bradford J. Black*

14