**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARDAUTH SOLUTIONS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THALES DIS CPS USA, INC.,<br><br>    Defendants. | Civil Action File No. 1:26-cv-1065 |

**DEFENDANTS' MOTION TO DISMISS**

**UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 12(b)(6)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................iii

LIST OF EXHIBITS ................................................................................................................... vi

TABLE OF ABBREVIATIONS ................................................................................................vii

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

        A.      Procedural History of Asserted U.S. Patent No. 8,860,013 ...................... 2

        B.      Claim 28 and Description of Claimed Invention ....................................... 2

III.    CLAIM 28 IS INVALID UNDER 35 U.S.C. § 101 ................................................ 4

        A.      Legal Standard ........................................................................................... 4

                1.      Dismissal Under FRCP 12(b)(6)................................................... 4

                2.      Patent Eligibility Under 35 U.S.C. § 101..................................... 5

                3.      Patent Eligibility May Be Resolved at the Pleading Stage ......... 5

        B.      Argument .................................................................................................... 6

                1.      The Claims are Directed to an Abstract Idea Under *Alice* Step One .......... 6

                2.      Claim 28 Lacks an Inventive Concept Under *Alice* Step Two ................... 9

                3.      Plaintiff's FAC Does Not Plausibly Allege Facts Supporting Eligibility ...................................................................................... 10

        C.      Claim 28 is Representative of All Claims................................................. 12

IV.     CLAIM 28 IS INVALID UNDER 35 U.S.C. § 112, ¶ 2 ...................................... 13

        A.      Legal Standards........................................................................................ 13

                1.      Indefiniteness Under 35 U.S.C. 112, ¶2 ..................................... 13

                2.      Indefiniteness May Be Resolved at the Pleading Stage............. 14

        B.      Argument .................................................................................................. 15

       1.     The Phrase "in lieu of" Has an Ordinary Meaning Not Contradicted by the Specification or the Intrinsic Record ............................................. 16

       2.     The Phrase "the challenge data is received in lieu of a challenge" is Internally Inconsistent With Other Claim Language ............................... 17

       3.     The Phrase "the challenge data is received in lieu of a challenge" is Inconsistent with the Specification ........................................................... 18

V.      DISMISSAL WITH PREJUDICE IS APPROPRIATE ................................................... 20

VI.    CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................. i

ii

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................................. 5

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ................................................................................. 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ......................................................................................... passim

*Allen Engineering Corp. v. Bartell Industries, Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002) ............................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 4

*Association for Molecular Pathology v. Myriad Genetics, Inc.*,
  569 U.S. 576 (2013) ................................................................................................... 5

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ......................................................................... 16, 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 4

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................................... 12

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ................................................................................. 18

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ............................................................................... 17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920. F.3d 759 (Fed Cir. 2019) ......................................................................... 5, 6, 11

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) ......................................................................... 15, 18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................. 5, 9, 10, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ................................................................................. 6

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ................................................................................. 7

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................................. 6

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................................. 6

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) ................................................................................. 15

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ................................................................................. 6

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ................................................................................. 21

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ................................................................................. 4

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ................................................................................. 14

*Microsoft Corp. v. AT & T Corp.*,
  550 U.S. 437 (2007) ................................................................................. 6

*Mortg. Grader, Inc. v. First Choice Loan Servs.*,
  811 F.3d 1314 (Fed. Cir. 2016) ................................................................................. 8

*MyMail, Ltd. v. ooVoo, LLC*,
  934 F.3d 1373 (Fed. Cir. 2019) ................................................................................. 15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ................................................................................. 14, 16

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ................................................................................. 15

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ................................................................................. 17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 14

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................................. 4

iv

*Process Control Corp. v. Hydreclaim Corp.*,
190 F.3d 1350 (Fed. Cir. 1999)................................................................................ 15

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)............................................................................ 5, 11

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019)................................................................................. 6

*Stripling v. Jordan Prod. Co*., LLC,
234 F.3d 863 (5th Cir. 2000)................................................................................... 21

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)........................................................................ 14, 16

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)................................................................................. 6

*Thorner v. Sony Computer Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)........................................................................ 15, 17

*TLI Communs. LLC v. AV Auto.,*
*L.L.C.*, 823 F.3d 607 (Fed. Cir. 2016)...................................................................... 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC,
874 F.3d 1329 (Fed. Cir. 2017)............................................................................... 11

**Statutes**

35 U.S.C. § 101............................................................................................... passim

35 U.S.C. § 112................................................................................... 1, 2, 13, 20

35 U.S.C. § 282........................................................................................................ 14

**Other Authorities**

Black's Law Dictionary 787 (6th ed. 1990)............................................................. 16

**Rules**

Federal Rules of Civil Procedure 12(b) ........................................................... passim

**LIST OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | U.S. Patent No. 8,689,013 |
| 2 | Non-Final Office Action dated September 18, 2012 |
| 3 | Notice of Allowability dated December 26, 2013 |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| '013 Patent | U.S. Patent No. 8,689,013 |
| Asserted Claims | "Includes at least" claim 28 of the '013 Patent |
| Plaintiff | Plaintiff CardAuth Solutions LLC |
| Defendant | Defendant Thales IS CPL USA, Inc. |
| FAC | First Amended Complaint (Docket 17) |
| USPTO | United States Patent and Trademark Office |

## I.    INTRODUCTION

In this patent case, CardAuth Solutions, LLC ("CardAuth") asserts infringement of claim 28 of U.S. Patent No. 8,689,013 ("the '013 Patent") against Thales DIS CPS USA, Inc. ("Thales"). Dkt. 17. Thales moves this court to dismiss the First Amended Complaint ("FAC") under Fed. R. Civ. P. 12(b)(6) because, the '013 Patent is not patent eligible under 35 U.S.C. § 101 and is indefinite under 35 U.S.C. § 112, ¶ 2. Both patent eligibility and indefiniteness are ultimately legal conclusions amenable for resolution on a Motion to Dismiss.

The '013 Patent issued on April 1, 2014 – prior to the June 19, 2014, Supreme Court decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The *Alice* decision addressed when patents fail to satisfy § 101 and provided a two-step rubric to make that determination. However, the earlier-issued '013 Patent was not analyzed under that rubric in the United States Patent and Trademark Office ("USPTO").  *Alice* Step One asks what the patent claim is "directed to."  If the patent claim is directed to an abstract idea, *Alice* Step Two asks whether the claims recite "significantly more" than just the abstract idea, which would be the inventive concept. *Alice*, 573 U.S. at 218.  If the claim recites an abstract idea, and the purported inventive concept does not provide something more, the patent claim is not eligible under § 101 and is invalid.

In this case, under *Alice* Step One, asserted claim 28 recites an access card configured to "receive challenge data," "obtain key-management data from the challenge data," and "store the key-management data in [a] memory of the access card."  Each of these claim elements are analogous to mental processes, which are patent-ineligible abstract ideas.  Under *Alice* Step Two, the claim elements, either alone or as an ordered combination, lack an inventive concept sufficient to transform the abstract idea into a patent-eligible application under 35 U.S.C. § 101, also making claim 28 invalid.

1

Additionally, claim 28 requires that "the challenge data is received in lieu of a challenge," meaning that the challenge data is received *as a substitute for* the challenge. In other words, the claim requires challenge data to be received but not the challenge. However, this plain meaning is inconsistent with other claim language found within this same claim of the '013 Patent, other claims of the '013 Patent, and with the specification. Consequently, one skilled in the art would not have reasonable certainty as to the scope of the invention – particularly as to whether the challenge is received or not – thus rendering the claim indefinite under 35 U.S.C. § 112, ¶ 2.

For these reasons, the asserted claims of the '013 Patent are invalid. Consequently, Plaintiff has no plausible claim for relief, and the FAC should be dismissed with prejudice.

## II.   BACKGROUND

### A.   Procedural History of Asserted U.S. Patent No. 8,860,013

The '013 Patent titled "Dual-Interface Key Management" was filed on October 20, 2010. Dkt. 17-1, at ¶ 6. A copy of the '013 Patent is attached as Exhibit 1. During its review by the USPTO, on September 18, 20212, the Examiner issued an Office Action citing prior art establishing that an access card with an interface, memory, and processor configured to receive challenge data, process the challenge data to obtain key-management information, and store the key-management information was previously disclosed. Exhibit 2 at 4-5, 9. After a number of interactions between applicant and the USPTO, on September 26, 2013, the USPTO issued a Notice of Allowability providing an Examiner's Amendment substantially amending all of the pending independent claims and adding new claims. Exhibit 3 at 2-11. The '013 Patent issued on April 1, 2014.

### B.   Claim 28 and Description of Claimed Invention

The FAC alleges that one or more of Thales' products "directly infringes one or more claims of the '013 Patent." Dkt. 17-1 at ¶ 28. The FAC references claim 28 in its description of the

2

'013 Patent, *Id*. at ¶¶ 11-12, and its infringement allegations, *Id*. at ¶¶ 18, 22, 24, 28, making claim 28 representative. *See* III.D., *infra*. Claim 28 of the '013 Patent recites:

> An access card comprising:
> an interface;
> a memory; and
> a processor coupled to the interface and to the memory, wherein
> the processor is configured to
> > receive challenge data, according to an authentication protocol, via the interface, wherein
> > > the challenge data is received in lieu of a challenge,
> > > the challenge comprises one or more random numbers,
> > > the challenge data comprises encrypted key-management information, and
> > > the challenge is processed to generate a response according to the authentication protocol,
> > obtain key-management information from the challenge data, wherein
> > > the processor is configured to obtain the key-management information by retrieving the key-management information from the challenge data by decrypting the encrypted key-management information, and
> > store the key-management information in the memory of the access card.

'013 Patent at 33:42-34:22.

The '013 Patent describes the interface as a conventional computer component, *id*. at 3:54-58 (interfaces can comply with ISO 14443 and ISO 7816 standards) that uses a conventional authentical protocol. *Id*. at 34:38-39 ("authentication protocol is a secure socket layer (SSL) protocol"). Additionally, the '013 Patent describes storing security data (e.g., cryptographic keys) and processing this security data on contactless devices (e.g., an access card) as also conventional. *Id*. at 3:19-35. The FAC cites column 15, lines 22-36 of the '013 Patent, Dkt. 17-1, at ¶ 10,

3

describing not using "pure random data to generate the initial challenge string" – but also hiding key-management information within "the seemingly random challenge strings."[1] The key-management data (e.g., a key) is then obtained from the challenge data, and that key-management data is then stored. '013 Patent at 24:46-49.

## III.    CLAIM 28 IS INVALID UNDER 35 U.S.C. § 101

### A.    Legal Standard

#### 1.    Dismissal Under FRCP 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, and dismissal is appropriate when the complaint fails to plead enough facts to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a Rule 12(b)(6) motion, the court accepts well-pleaded factual allegations as true but is not required to accept legal conclusions or threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678-79 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions"). The Fifth Circuit likewise holds that a plaintiff must plead sufficient factual content to raise a right to relief above the speculative level and to permit a reasonable inference of liability. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

---

[1] Yet, as discussed *infra* (§ IV.B.3.), Claim 28 is ambiguous as to whether the challenge data (which includes the key-management information) is different than the challenge (which includes the random numbers).

### 2.    Patent Eligibility Under 35 U.S.C. § 101

Patent eligibility under 35 U.S.C. § 101 is ultimately "a question of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Section 101 defines subject matter eligible for patent protection as including "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, this provision contains implicit exceptions for "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). In *Alice*, the Supreme Court articulated a two-step framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. *Alice* Step One determines if "the claims at issue are directed to one of those patent-ineligible concepts." *Id*. If the patent challenger satisfies *Alice* Step One, the Court moves to *Alice* Step Two, which involves a search for an "inventive concept" – which is an element or combination of elements establishing that the patent amounts to significantly more than a patent on the ineligible concept itself. *Id*

### 3.    Patent Eligibility May Be Resolved at the Pleading Stage

Patent eligibility under 35 U.S.C. § 101 may be resolved at the pleading stage where there are "no factual allegations that, taken as true, prevent resolving the eligibility analysis as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920. F.3d 759, 765 (Fed Cir. 2019) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). Additionally, while a patent eligibility determination requires a full understanding of the claimed invention, "claim construction is not an inviolable prerequisite to a validity determination under § 101" at the pleading stage. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of motion to dismiss under Rule 12(b)(6)).

B.      Argument

        1.      **The Claims are Directed to an Abstract Idea Under *Alice* Step One**

The *Alice* Step One inquiry assesses "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). That inquiry "must focus on the language of the Asserted Claims themselves." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292-93 (Fed. Cir. 2020) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). In addition, in this analysis, "while the specification may help illuminate the true focus of a claim … reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint*, 920 F.3d at 766.

        a.      **The Focus of the Claims are not Patent Eligible**

The focus of claim 28 of the '013 Patent is to patent-ineligible subject matter including mental processes and abstract ideas.  The Supreme Court has long recognized that "mental processes, and abstract intellectual concepts are not patentable," *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972), and the Federal Circuit likewise holds that "a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011).

Claim 28 recites a processor configured to (i) "receive challenge data," (ii) "obtain key-management information from the challenge data," and (iii) "store the key-management information." Information (i.e., data) is intangible. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 451 n.12 (2007)). And collecting and analyzing information are respectively within the realm of abstract ideas and mental processes. *Elec. Power*, 830 F.3d at 1353-54.  Additionally, electronically storing data is also an abstract idea. *See TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 611 (Fed.

6

Cir. 2016) ("claims are directed to the abstract idea of classifying and storing digital images"). Consequently, the focus of the limitations of receiving challenge data, obtaining key-management information from the challenge data, and the storing the key-management information are directed to patent-ineligible subject matter (i.e., a combination of mental processes and abstract ideas).

While claim 28 of the '013 Patent clarifies that the key-management information is obtained by "decrypting the encrypted key-management information," '013 Patent at 34:13-19, the use of decryption does not save claim 28 from being directed to patent-ineligible subject matter. According to the Federal Circuit, "manipulat[ing] existing information to generate additional information is not patent eligible." *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014), and decryption merely uses an algorithm to manipulate (encrypted) information to generate additional (unencrypted) information. Thus, the claimed "decrypting the encrypted key-management information" only adds an additional abstract idea to the already-identified patent-ineligible subject matter recited in independent claim 28.

Claim 28 further recites that "the challenge comprises one or more random numbers" and "the challenge data comprises encrypted key-management information." '013 Patent at 34:7-10. However, these additional limitations – directed to the type of data being received – also do not save claim 28. The collection of information, "including when limited to particular content," is still "within the realm of abstract ideas." *Elec. Power*, 830 F.3d at 1353. Therefore, limiting the content of the challenge data or challenge being received does not change the patent eligibility analysis under *Alice* Step One. Claim 28 is directed to an abstract idea.

> b.  **Claim 28 Merely Computerizes Longstanding Human Activity**

The Supreme Court has held that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. The receipt of encrypted data (i.e., the key-management information) within the challenge data,

7

the decryption of that encrypted data, and subsequent storing of that decrypted data is longstanding human activity that has been performed for millennia – the ancient Egyptians provided the first known evidence of the use of cryptography, and Julius Ceaser was known to use a form of encryption to convey secret messages. The '013 Patent also admits that many encryption techniques were well-known at the time of the invention. (Dkt. 17-1, the '013 Patent at 17:62-67).

In this instance, claim 28 merely recites using generic computer components (e.g., interface, processor, and memory) to perform the aforementioned mental processes. Specifically, claim 28 recites that the challenge data is received "via the interface," (Dkt. 17-1, the '013 Patent at 34:4-5). Additionally, the processor is configured to obtain the key-management information "by decrypting the encrypted key-management information." *Id*. at 34:13-19, and the key-management information is stored "in memory of the access card." *Id*. at 34:20-21. Each of the interface (receiving information), processor (analyzing information), and memory (storing information) merely perform their conventional functions without transforming the abstract idea into patent-eligible subject matter. *See Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (no inventive concept where claims only add "generic computer components such as an 'interface'").

### c. Claim 28 is Analogous to Claims Held Ineligible by the Federal Circuit

The Federal Circuit has endorsed the practice of evaluating claims for patent eligibility by comparing those claims to other claims previously-evaluated for patent eligibility. *Enfish*, 822 F.3d at 1334 ("sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases"). Here, claim 28 closely resembles the claims identified by the Federal Circuit as reciting patent-ineligible subject matter within *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed Cir. 2014), determining the

8

patent at issue was "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Id*. at 1347. As discussed *supra* (§ III.B.1.a.), claim 28 recites a processor configured to (i) "receive challenge data," (ii) "obtain key-management information from the challenge data," and (iii) "store the key-management information in the memory card." Thus, the claimed "receive challenge data" maps to the "collecting data" of *Content Extraction*, the claimed "obtain key-management information from the challenge data" maps to the "recognizing certain data within the collected data set" of *Content Extraction*, and the claimed "store the key-management information in the memory card" maps to the "storing the recognized data in a memory" of *Content Extraction*. "The concept of data collection, recognition, and storage is undisputedly well-known [and] humans have always performed these functions." *Id.* Consequently, claim 28 is directed to the same patent-ineligible subject matter identified by the Federal Circuit within *Content Extraction*.

### 2. Claim 28 Lacks an Inventive Concept Under *Alice* Step Two

Because claim 28 is directed to patent-ineligible subject matter at *Alice* Step One, the analysis moves to *Alice* Step Two, where claim 28 remains patent-eligible *only if* it contains an "inventive concept" sufficient to transform that abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217-18 (2014). Such an inventive concept is missing from the claims. In *Alice* Step Two, the Court examines the claim elements individually and "as an ordered combination" to determine whether they add something significantly more than the abstract idea itself. *Id*. However, the addition of generic computer components "cannot transform a patent-ineligible abstract idea into a patent-eligible invention," *Id*. at 223, and as discussed *infra* (§ III.B.1.b.), the recited generic computer components (e.g., interface, processor, and memory) merely implement the patent-ineligible concept of claim 28 on a computer device (i.e., the access card), and "cannot impart patent eligibility." *Id*.

9

The generic computer components recited in the claims merely perform conventional functions, which are also not sufficient to supply an inventive concept. *See Content Extraction*, F.3d at 1348 (no "inventive" concept where computer components "perform well-understood, routine, and conventional activities commonly used in industry"). Here, the interface receives data (i.e., challenge data), the memory stores different data (i.e., key-management information), and the processor decrypts the received data to generate the stored data. These are all well-understood, routine, and conventional activities that were previously performed by access cards as evident by the findings made by the Examiner in the first Office Action. *See infra* § II.A. Therefore, claim 28 is not patent eligible under 35 U.S.C. § 101, making dismissal under Rule 12 appropriate.

### 3. Plaintiff's FAC Does Not Plausibly Allege Facts Supporting Eligibility

#### a. Purported Factual Allegations Within the FAC

The only portions of the FAC that appear relevant to addressing patent eligibility under 35 U.S.C. § 101 are found in ¶¶ 7-13.

#### b. Improvement Alleged in the FAC is Not a Technical Improvement

The FAC cites 15:22-36 of the '013 Patent, *id*. at ¶ 9, which describes that "the administration server simplifies the operations that need to be performed by the access card." However, as discussed *supra* (§ III.B.1.a.), the operations being performed by the access card (i.e., receiving challenging data, analyzing the challenge data, and storing the results of the analysis) are themselves abstract ideas. To the extent that the '013 Patent describes an improvement, this improvement is not to the access card itself, but to an abstract idea. *See SAP,* 898 F.3d at 1168-69 ("[w]hat is needed is an inventive concept in the non-abstract application realm"). Consequently, the improvement referenced in the FAC is insufficient to supply an inventive concept necessary to transform the patent-ineligible subject matter of claim 28 into patent-eligible subject matter.

### c.  Improvements Referenced in the FAC are not Tied to the Claims

At *Alice* Step Two, any alleged technological improvement must be reflected in the claim language itself, as the Federal Circuit has repeatedly rejected attempts to locate an inventive concept in unclaimed features, finding a claim patent ineligible when "the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (emphasis in original). Similarly, "the specification cannot be used to import details from the specification if those details are not claimed," *ChargePoint*, 920 F.3d at 769, and courts must focus on the elements of the claims themselves. *Two-Way Media*, 874 F.3d at 1338 (addressing the scope of *Alice* Step Two). Accordingly, any purported improvement must be found in the claims themselves in order to supply an inventive concept necessary to transform the patent-ineligible subject matter recited by claim 28 into patent-eligible subject matter.

The FAC infers that prior access-card architecture suffered from problems associated with an intermediate computer positioned "between the remote server and the access card." Dkt. 17 at ¶¶ 7-8.  The FAC also infers that this problem is addressed because "the '013 Patent describes a conduit approach" in which "some data from the remote server can simply be passed along to the access card … without specialized software" (i.e., bypassing the intermediate computer). *Id*. at ¶ 9.  However, independent claim 28 is directed solely to an access card.  Ex. 1, '013 Patent at 33:52. Moreover, none of the claims reference an intermediate computer, conduit, or remote server.  *Id*. at 30:49-34:52. Consequently, any improvement to the intermediate device is not material to patent eligibility since claim 28 does not recite an intermediate device.

Additionally, with reference to the simplification discussed *supra* (§ III.B.3.b), the '013 Patent discloses that "[t]his simplification arises because once the payload-laden challenge string

… is received [], the secure channel can be terminated." '013 Patent at 15:33-36. However, the improvement inferred by this "simplification" is not reflected in the claims of the '013 Patent. Neither claim 28 nor any of the other claims in the '013 Patent specifically recites terminating a secure channel or even makes passing reference to a secure channel. Consequently, even if "simplification" in the specification could be considered a technical improvement, this purported improvement is not found in the claims and cannot save the '013 Patent at *Alice* Step Two.

### C.    Claim 28 is Representative of All Claims

A claim may be treated as representative when "patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *Content Extraction*, 776 F.3d at 1348 (claims are representative where "substantially similar and linked to the same abstract idea"). As discussed *supra* (§ II.B.), claim 28 is the only claim within the '013 Patent explicitly referred to within the FAC; however the FAC infers that it is exemplary of the other claims.  Dkt. 17 at ¶ 28 ("infringes one or more claims of the '013 Patent, including at least claim 28"). The FAC makes no assertions that the other claims within the '013 Patent change the eligibility analysis, and consequently, claim 28 is representative of all the claims within the '013 Patent.

Aside from claim 28, the '013 Patent recites three other independent claims: claims 1, 10, 20, and each of independent claims 1, 10, and 20 recites the same limitations that cause independent claim 28 to be directed to patent-ineligible subject matter. Specifically, each of independent claims 1, 10, and 20 recites "receive challenge data," "obtain key-management information from the challenge data," and "store the key-management data." '013 Patent at 30:57,65-66, 31:6-7 (Claim 1), 31:50,58-59,66-67 (Claim 10), and 32:50-51, 60-61, 33:5-6 (Claim 20). Consequently, independent claims 1, 10, and 20 are linked to the same patent-ineligible subject matter that is recited in claim 28.

12

Additionally, under *Alice* Step Two, none of dependent claims 29-35 add any claim limitations, either alone or as an ordered in combination, that would transform the claims into a patent-eligible application of this abstract idea. Dependent Claims 29 and 35 merely describe using a conventional PKI protocol for the challenge data/authorization protocol. '013 Patent at 34:22-26,51-52. Dependent claim 31 recites "generat[ing] another response" and "transmit[ting] the another response," which are conventional activities previously known to the industry. '013 Patent at 34:27-33. Like claim 30, dependent claim 31 also recites "generat[ing] another response." '013 Patent at 34:34-36. Dependent claim 32 recites use of the conventional "secure socket layer (SSL) protocol" as part of the authentication protocol. '013 Patent at 34:37-39. Dependent claim 33 recites that the challenge is received and decrypted, which are also conventional activities previously known to the industry. '013 Patent at 34:40-45. Finally, dependent claim 33 recites that the challenge data includes another key, and this key is used to generate an access request. '013 Patent at 34:46-60. These limitations within claim 33 are also directed to conventional activities previously known to the industry and do not convey patent eligibility under *Alice* Step Two.

## IV.    CLAIM 28 IS INVALID UNDER 35 U.S.C. § 112, ¶ 2

### A.    Legal Standards

#### 1.    Indefiniteness Under 35 U.S.C. 112, ¶2

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor … regards as the invention." 35 U.S.C. § 112, ¶ 2 (2006). The Supreme Court has held that a claim is indefinite pursuant to § 112, if the claims "fails to inform those skilled in the art of the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Although absolute precision is not required, the claims "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

13

Words of a claim "are generally given their ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art" after reviewing the intrinsic record at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*) (internal citations omitted). "In some cases, the ordinary meaning of claim language … may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id*. at 1314. Consequently, extrinsic evidence is not necessary to construe a "claim meaning that is unambiguous." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290-91 (Fed. Cir. 2015) (no error when court declines to construe claim term with plain and ordinary meaning). "There are only two exceptions to [the] general rule [of ordinary meaning]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Notably, "courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (internal citations omitted). Also, "a nonsensical result does not require the court to redraft the claims of [a] patent … where as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." *Id*. citing *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999).

### 2.    Indefiniteness May Be Resolved at the Pleading Stage

Failure to comply with "any requirement of section 112," is a defense in any action involving the infringement of a patent. 35 U.S.C. § 282(b)(3)(A). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d

14

509, 517 (Fed. Cir. 2012). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). A district court can also perform a claim construction, without a formal *Markman* hearing, prior to ruling on a Motion to Dismiss. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019) (finding fault in district court's failure to perform a claim construction prior to granting Rule 12 motion).

###### B.    Argument

Claim 28 of the '013 Patent is indefinite for at least two reasons. The claim recites "the processor is configured to receive challenge data, according to an authentication protocol … wherein the challenge data is received ***in lieu of*** a challenge." the '013 Patent at 34:3-6 (emphasis added).  Claim 28 also recites "the challenge is processed to generate a response according to the authentication protocol." *Id.* at 34:11-12.  However, the ordinary meaning of the phrase "in lieu of" is "as a substitute for." These two claim limitations, read together, "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention," *see Nautilus*, 572 U.S. at 899, because the claim language implies that the "challenge" is both not received (i.e., "challenge data is received in lieu of a challenge") yet also received and subsequently processed (i.e., "the challenge is processed to generate a response"). Consequently, the claim language is internally inconsistent and indefinite.

Additionally, the claim language "the challenge data is received in lieu of a challenge" by itself is indefinite. This claim language must be construed as requiring the "challenge data" be distinct from the "challenge." *See Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."). However, this interpretation is inconsistent with the '013 Patent, which uses the terms challenge and challenge data interchangeably (i.e., not distinct). *See Allen Engineering Corp. v.*

15

*Bartell Industries, Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) (rejecting interpretation of "perpendicular" to mean "parallel" when specification does not support such an interpretation).

 1.    **The Phrase "in lieu of" Has an Ordinary Meaning Not Contradicted by the Specification or the Intrinsic Record**

  a.    **The Meaning of the Phrase "in lieu of" is "as a substitute for"**

The phrase "in lieu of" is an unambiguous term with so special meaning to those skilled in the art and does not require a claim construction. *See Summit 6*, 802 F.3d at 1290-91. In the context of the claimed "challenge data is received in lieu of a challenge," the phrase "in lieu of" establishes a relationship between the challenge data and the challenge as it pertains to the claimed receiving of the challenge data. This relationship is that the challenge is not received whereas the challenge data is received. In particular, the challenge data is received as a substitution for the challenge. This is consistent with evidence that establishes the meaning of the phrase "in lieu of" is "instead of," "in place of," or "as a substitute for." *See* Black's Law Dictionary 787 (6th ed. 1990).

  b.    **Patentee Did Not Set Out a Special Definition for the Phrase "in lieu of"**

"To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its … ordinary meaning." *Thorner*, 669 F.3d at 1365, citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The specification of the '013 Patent does not use the phrase "in lieu of."  Moreover, the specification is also silent as to any analogue/synonym of the phrase "in lieu of" when used in the same context as the claim language.  Thus, Patentee has not set forth a special definition of "in lieu of" that differs from its ordinary meaning.

16

### c. Patentee Did Not Disavow the Ordinary and Customary Meaning of "in lieu of" within the Intrinsic Record

Narrowing of claim scope via prosecution disclaimer cannot be made without a "clear and unmistakable" disavowal within the prosecution record. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). The claim phrase "in lieu of," as part of the greater phrase "the challenge data is received in lieu of a challenge," was first introduced into the claims via an Examiner's Amendment within the Notice of Allowability. Exhibit 3 at 2-11. Notability, the Examiner did not expound upon the meaning of the phrase "in lieu of." Additionally, the Patentee did not file any comments in response to this Examiner's Amendment that would support a finding that Patentee disavowed the full scope of the phrase "in lieu of." Consequently, the intrinsic record does not support redefining the meaning of the phrase "in lieu of" beyond its ordinary meaning.

### 2. The Phrase "the challenge data is received in lieu of a challenge" is Internally Inconsistent With Other Claim Language

Aside from reciting "the processor is configured to receive challenge data … the challenge data is received in lieu of a challenge," '013 Patent at 34:3-6, claim 28 of the '013 Patent also recites, in a second phrase, that "the challenge is processed to generate a response according to the authentication protocol." *Id*. at 34:11-12. As discussed *supra* (§ IV.B.1.a.) the first phrase means that the *challenge is not received* by the access card since the challenge data is received as a substitute for the challenge. The second phrase, however, clearly requires that the access card processes the challenge to generate a response.  However, the challenge has to be received by the access card before it can be processed, and the receiving of the challenge by the access card is inconsistent with the first phrase establishing that the challenge is not received by the access card.

Plaintiff could presumably argue that the claim language does not preclude the challenge from being received at some other time. And, in fact, dependent Claim 33 recites that "the processor is further configured to receive … the challenge." '013 Patent at 34:41-43. However,

17

such a view of the claim language would essentially rewrite the claim 28 to require "the challenge data is received in [addition to] a challenge." However, doing so violates two principles of claim construction. First, "courts may not redraft claims … to sustain their validity." *Chef Am.*, 358 at 1374. Second, "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (permitting a patentee to argue that certain language is nonlimiting "would render the scope of the patent ambiguous").

As a prerequisite to issuing the '013 Patent, the USPTO required the phrase "the challenge data is received in lieu of a challenge" be added to all of the independent claims. Exhibit 3 at 2-13. Consequently, the claimed relationship between the challenge data and the challenge (i.e., the challenge data is a substitute for the challenge) cannot properly be read out of the claim and therefore must be construed to have some meaning. If the challenge data is received in addition to the challenge, as implied by certain of the claim language in Claims 28 and 33, then the claimed phrase of "the challenge data is received in lieu of a challenge" is improperly non-limiting.

Consequently, the two phrases within claim 28 of "the challenge data is received in lieu of a challenge" and "the challenge is processed," when read together, fail to reasonably inform whether the claimed "challenge" is received or not received. And thus, this internally-inconsistent claim language renders claim 28 indefinite.

### 3. The Phrase "the challenge data is received in lieu of a challenge" is Inconsistent with the Specification

Claim 28 recites "the challenge data is received in lieu of a challenge." '013 Patent at 34:6. A basic claim construction principle is that "[w]here a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton*, 616 F.3d at 1254. In applying this claim principle to claim 28, the

18

claimed "challenge data" would have to be distinct from the "challenge." However, this interpretation is inconsistent with the specification.

Reference is made to Figure 8 of the '013 Patent, a portion of which is reproduced below.



FIG. 8

As indicated by the illustrated line (labeled "Transmit Challenge") pointing from the Challenge 410 within the Card Reader 220 to the Challenge 410 within the Card 110, the Challenge 410 is received by the Card 110. However, in describing this figure, the Detailed Description of the specification discloses "Card reader 220 then transmits challenge data 410 to access card 110 through wireless link 270." '013 Patent at 19:22-23 (emphasis added). Yet, this is directly contrary to the claim language requiring that the "challenge data" be distinct from the "challenge," *see* IV.B.2., *supra,* leaving one of skill to question the claimed operation.

Additionally, claim 28 also recites "the challenge comprises one or more random numbers" and the "challenge data comprises encrypted key-management information." *Id*. at 34:7-8. However, these limitations are not consistent with the specification. In describing Figure 8, the Detailed Description discloses "[c]hallenge data 410 can consist of or include … a large random

19

number." *Id*. at 19:19-21. The Detailed Description also states "the key-management information can be hidden within one or more of the seemingly random challenge string [random number]." *Id*. at 15:27-28. Thus, the specification implies that the Challenge 410 of Figure 8 is challenge data, which includes a random number and that key-management information is hidden within the random number. Consequently, one of skill would not be reasonably informed as to whether the random number is within the challenge data, as indicated by the specification, or whether the random number is within the challenge, as explicitly recited in claim 28.

## V.    DISMISSAL WITH PREJUDICE IS APPROPRIATE

Dismissal should be with prejudice and a final judgment should be entered because amending the FAC would be futile. The Fifth Circuit has held that dismissal with prejudice is appropriate where "it is clear that the defects are incurable," *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002), and an amended complaint is futile when it would fail to survive a Rule 12(b)(6) motion. *See Stripling v. Jordan Prod. Co*., LLC, 234 F.3d 863, 873 (5th Cir. 2000). Here, the claims are patent ineligible as a matter of law under 35 U.S.C. § 101, and no amendment to the FAC can alter the claim language or cure the '013 Patent's substantive legal defects. The deficiencies arise from the '013 Patent itself rather than any pleading defect; hence amending the FAC would be futile and dismissal with prejudice is warranted.

## VI.    CONCLUSION

The Court should dismiss Plaintiff's FAC with prejudice because the claims are not patent eligible under 35 U.S.C. § 101 and based upon the indefiniteness of the claims under 35 U.S.C. § 112, ¶ 2. For these reasons, dismissal with prejudice is required because allowing the Plaintiff another opportunity to amend the FAC would be futile.

Dated: June 29, 2026                          Respectfully submitted,

/s/ *Robert P. Hart*
Robert P. Hart
Texas Bar No. 24062399
**ADDYHART LLC**
2025 Guadalupe Street, Suite 260
Austin, TX 78705
949.337.0568
robert@addyhart.com

Meredith Martin Addy (*pro hac vice*)
**ADDYHART LLC**
10 Glenlake Parkway
Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com

*Attorneys for Defendant*
*Thales IS CPL USA, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of June, 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF, causing electronic service upon:

Bradford J. Black
bblack@bradfordblack.com

*Attorney For Plaintiff*


/s/ *Robert P. Hart*

Robert P. Hart

*Attorney for Defendant*
*Thales IS CPL USA, Inc.*

i